AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

AR GROUP OF RESTAURANTS AND NU GEN
RESTAURANT GROUP DATA STORED AT PREMISES
CONTROLLED BY RPNC SYSTEMS

Case No.  2:21-mj-374

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A

located in the  -------------------------- District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B-I and B-II

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C.§§ 7201, 7202, 7203 | Tax Evasion, Employment Tax Fraud, Filing False Tax Returns |
| 8 U.S.C.§ 1324 | Harboring unauthorized non-citizen workers. |

The application is based on these facts:

See the attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Randal L. Gaddis II - Special Agent IRS - CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  5-26-21

_____
*Judge's signature*

City and state:  Columbus, Ohio

Hon. Chelsey M. Vascura - U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH AR GROUP OF RESTAURANTS AND NU GEN RESTAURANT GROUP THAT IS STORED AT PREMISES CONTROLLED BY RPNC SYSTEMS | Case No.<br><br>**Filed Under Seal** |

**AN AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Randal L. Gaddis II, having been duly sworn, hereby state the following:

**INTRODUCTION**

1.      I have been a Special Agent of the U.S. Department of the Treasury, Internal Revenue Service – Criminal Investigations (IRS-CI) since September 2012. I have completed all training, certifications, and other requirements of an IRS-CI Special Agent, and I have the authority to perform all duties conferred upon Special Agents under all laws and regulations within the jurisdiction of the Internal Revenue Service including but not limited to investigating potential violations of Title 26 (the Internal Revenue Code), Title 18 (including money laundering and related specified unlawful activities) and Title 31 (the Bank Secrecy Act) of the United States Code, and to execute search, seizure, and arrest warrants.

2.      With the assistance of Special Agents from U.S. Immigration and Customs Enforcement – Homeland Security Investigations (HSI), U.S. Department of Labor – Office of the Inspector General (DOL-OIG), and the Ohio Department of Taxation – Criminal Investigations, I am currently investigating ALI BUTT (BUTT), BAHADAR DURRANI (DURRANI), their corporations, AR GROUP of RESTAURANTS (ARG) and NU GEN RESTAURANT GROUP (NU GEN), respectively, and various related entities and individuals, known and unknown,

1

working as employees and/or managers of ARG, NU GEN, and/or the restaurant franchises they operate, for crimes related to the unlawful employment of non-citizens, who are unlawfully present in the United States, without employment authorization, and the filing of false business and employment tax returns, and failure to withhold and pay employment taxes.

3.    As further detailed below, BUTT and DURRANI hold ownership interests, some independent and some collective, in over one hundred fast food restaurants located in numerous states.   BUTT and DURRANI also own the "management groups" ARG and NU GEN, respectively. ARG and NU GEN provide administrative services, including bookkeeping and payroll, for the restaurants in their respective groups.  Based on our investigation to date, there is probable cause to believe several people working with ARG and NU GEN have been recruiting individuals who are unlawfully present in the United States, without employment authorization, to work in the restaurants as cooks. These non-citizen workers are being paid in cash with money taken from the restaurants' registers.  The investigation has determined that these organizations are tracking the cash wages paid to these non-citizen workers, but the organizations do not collect, report, or pay over employment taxes for these workers' wages as required by federal law.

4.    Based on these facts, there is probable cause to believe BUTT, DURRANI,  and others working for ARG, NU GEN, or the related restaurants in their management groups, acting alone, together, and/or in concert with others, violated 26 U.S.C. §§ 7201 (attempts to evade the assessment of income and/or employment taxes), 7202 (failure to accurately collect, report or pay over employment taxes), 7206(2) (aiding in the preparation of false employment and/or business income tax returns), 8 U.S.C. § 1324(a)(1)(A) (intentional bringing in and harboring of non-citizens), and/or 18 U.S.C. § 371 (conspiracy to commit said offenses and/or to defraud the United

States). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes, as further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PURPOSE OF AFFIDAVIT

6.     I make this affidavit in support of an application for a search warrant for information associated with ARG, NU GEN, and the restaurants in these management groups that is stored on a digital medium at premises owned, maintained, controlled, or operated by RPNC SYSTEMS (RPNC), a cloud computing web services company whose headquarters is located at 371 Hoes Lane #200 Piscataway, New Jersey 08854 (the location to be searched as referenced in Attachment A).  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require RPNC to disclose to the government records and other information in its possession pertaining to ARG, NU GEN, and the restaurants in these management groups, including the contents of communications.

7.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3

## PROBABLE CAUSE

**General Tax Terms and Statutes:**

8.      Title 26 U.S.C. §§ 3102(a), 3111(a) and 3402(a) require employers to withhold Social Security, Medicare, and income taxes from employees' wages. In addition to withholding the employees' share of taxes, employers must make matching contributions on the Social Security and Medicare taxes. Treasury regulations, including 26 C.F.R. §§ 31.6011(a)-1, 31.6011(a)-4, 31.6071(a)-1(a), and 31.6151-1(a), require employers to file the Employer's Quarterly Federal Tax Returns (Forms 941), and to make quarterly payments of said taxes to the IRS.

9.      Title 26 U.S.C. § 3301 requires employers to pay unemployment taxes each year based on a percentage of the total wages paid during the calendar year. Treasury regulations, including 26 C.F.R. § 31.6011(a)-3, require employers to report said taxes on the Employer's Annual Federal Unemployment Tax Returns (Forms 940), filed with the IRS.

10.     A Wage and Tax Statement (Form W-2) is a statement issued by an employer to each of its employees after the close of the tax year. The Form W-2 reports the employee's total wages and tax withholdings. Employers are required to prepare Forms W-2 that properly account for the wages earned by the employee and the taxes withheld from those wages. Forms W-2 must be issued to the employee, and copies must also be filed with the Social Security Administration and the IRS.

11.     Individuals who are U.S. citizens are taxed on their worldwide income. Citizens must report income from all sources (unless specifically excluded by statute or treaty) on Form 1040, U.S. Individual Income Tax Return. Individuals who are sole proprietors or own any other form of single owner non-incorporated business report their business activity on Schedule C of the Form 1040. Individuals who are shareholders in an S corporation, partners in a partnership, or

4

members in a multi-member LLC report their proportionate share of the net profits or losses of those businesses on page 2 of Schedule E of the Form 1040. These and other Schedules are attached to the Form 1040 and the net profits or losses from the associated trade or business activities, along with any other income items, are reported on page 1 of the Form 1040 and become part of the calculation to determine the tax liability of the individual.

12.     Partnerships are agreements between two parties to cooperate and combine their efforts towards a mutually agreed upon goal. When a partnership is engaged in a trade or business activity it is required to report its net income or loss by filing a Form 1065, U.S. Return for Partnership Income. Federal tax laws treat partnerships as "flow through" entities which are not taxed directly. The net income or loss of the partnership is passed down to each of its partners based on their proportionate ownership, to be included on the partners' tax return (which in most circumstances is the Form 1040 filed by individuals).

13.     Corporations are business entities which in most cases are separate from their owners for purposes of tax and other legal liability. Under federal tax law there are two primary types of corporations: a traditional corporation (known as a C corporation), and a small business corporation (known as an S corporation). C corporations are taxed directly at the entity level and must report their net income or loss on Form 1120, U.S. Corporations Income Tax Return. S corporations are flow through entities. S corporations report their net income or loss on Form 1120S, U.S. Corporations Income Tax Return. The net income or loss of the S corporation is passed down to its shareholders based on their proportionate ownership, to be included on the shareholders' tax return (which in most circumstances is the Form 1040 filed by individuals).

14.     A limited liability company (LLC) is a business entity type that is similar in some ways to a corporation, while also having some features that are similar to a partnership. The laws

5

pertaining to LLCs vary by state. For federal tax purposes an LLC can elect to be treated as either a C corporation or an S corporation. If neither corporate election is made, an LLC with more than one owner will be treated as a partnership, and an LLC with only one owner will be treated as a sole proprietorship.

15.     Because of the flow-through function of entities that file Forms 1120S or 1065, if those entities file false Forms 1120S or Form 1065, then the Forms 1040 filed by the individual shareholders or partners will likely be false as well.

**Tax Terms in Relation to Immigration Status:**

16.     While immigration statutes categorize non-citizens as (a) lawfully present immigrants, (b) unlawfully present immigrants, or (c) nonimmigrants, tax statutes refer to non-citizens as either resident non-citizens or non-resident non-citizens—without regard to their lawful immigration status. Individuals who are U.S. resident non-citizens as defined by 26 U.S.C. § 7701(b)(1)(A) are generally taxed in the same way as U.S. citizens and must report worldwide income from all taxable sources on Form 1040. Individuals who are non-resident non-citizens are subject to taxation based on a special set of rules found in 26 U.S.C. § 871. With certain narrowly defined exceptions, non-resident non-citizens are generally subject to taxation only on income derived from sources within the United States or income connected with a U.S. trade or business. Non-resident non-citizens with U.S. taxable income are required to file Form 1040-NR.

17.     In general, salaries and wages earned by both resident non-citizens and non-resident non-citizens are subject to Social Security and Medicare taxes in the same way as U.S. citizens with few exceptions. Employers of resident non-citizens and non-resident non-citizens are required to withhold Social Security and Medicare taxes, and are liable for the matching employer portions of those taxes in the same way as they would be for employees who are U.S. citizens. Additionally,

6

26 U.S.C. § 1441 imposes a separate income tax withholding requirement on any individual or entity that makes certain types of income payments to non-resident non-citizens, including but not limited to salaries and wages.

18.     Based on my training and experience, I know that companies that employ individuals who are unlawfully present in the United States without employment authorization generally pay these employees in cash, or provide compensation in-kind (e.g., paying for their living expenses, acquiring  assets for them in nominee names). I also know that those companies will often take the additional steps of altering their accounting books and records to conceal these payments.

19.     Businesses that deal in whole or part in cash, such as restaurants, typically use a point of sale system linked to their cash registers to track their sales.  Information gathered by the point of sale system is typically used to prepare the businesses' financial reports and tax returns. Cash transactions voided or deleted from the point of sales system typically are not reported as gross receipts on the business income tax returns.  Accordingly, business owners engaged in tax evasion schemes will often skim cash from the business and then delete or void cash sales from the point of sale system.  In doing so, they cause gross receipts to be underreported on the business's tax return, causing the tax return to be false and the evasion of the proper tax assessment.

**Other Technical Terms:**

20.     The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a

7

range of IP addresses. Some computer users have "static" IP addresses, which are fixed or assigned to one computer for a long-term period. Other computer users have "dynamic" IP addresses, which are changed frequently.

21.     The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.     A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

23.     Cloud computing is the on-demand availability of computer system resources and data storage that is available to many users from anywhere that they have access to the Internet.

**Investigation Background Information:**

24.     This investigation is centered on ARG and NU GEN. Both are C corporations that function as management companies that oversee operations of multiple fast food restaurant franchises, primarily Popeye's Louisiana Kitchen (PLK) restaurants.[1] Franchises affiliated with ARG and NU GEN operate in several states, including New York, New Jersey, Delaware, Connecticut, Tennessee, Pennsylvania, and Ohio. ARG and NU GEN have a core group of individuals who manage the operations of the various franchises. This group is led by BUTT and DURRANI, and it also includes YAVER AKBAR DURRANI (YAVER), SIKANDER DURRANI (SIKANDER), Andy Dsouza, a/k/a ZAHID KAZI (KAZI), ALI DURRANI (ALI),

---

[1] In addition to Popeye's Louisiana Kitchen, ARG also manages the operation of a several Taco Bell, Dunkin' Donuts franchises; NU GEN also manages the operations of several Arby's franchises.

MUSTAFA JAMIL (JAMIL), FATU SMITH (SMITH), FAIZA DURRANI (FAIZA), AYDA DURRANI (AYDA), STEPHANIE ARGYROPOULOS (ARGYROPOULOS), and JAMIE SULLIVAN (SULLIVAN), among others.

25. According to tax records, BUTT and DURRANI are the only members of the core management group listed above who own portions of the various franchises. Tax records also identify at least 35 other individuals who have some percentage of minority ownership in the ARG and NU GEN managed franchises. These records reflect that some of these individuals have received wages from ARG and NU GEN and/or the franchises themselves. It is currently believed that these minority owners also have some role in the management or operations of the businesses themselves. However, their culpability (if any) in the alleged schemes is still to be determined. Tax records and Secretary of State business records from several states indicate that BUTT and DURRANI are the individuals who are primarily responsible for business and tax related matters for ARG, NU GEN, and their related franchises.

26. The chart below reflects the number of franchises BUTT and DURRANI owned individually in each of the last five years as well as the number of franchises in which they both had an ownership interest.

| Entity Owner | 2019 | 2018 | 2017 | 2016 | 2015 |
|---|---|---|---|---|---|
| BUTT | 87 | 58 | 49 | 31 | 29 |
| DURRANI | 31 | 30 | 29 | 17 | 9 |
| BUTT and DURRANI | 17 | 15 | 17 | 12 | 7 |

27. Business records obtained from numerous sources indicate that BUTT has been accumulating a portfolio of fast-food restaurant franchises since at least 2006, when he purchased the PLK located at 1351 Forest Ave, Staten Island, NY (Forest Chicken). DURRANI joined BUTT in this franchise in 2011. In the subsequent years, BUTT and DURRANI continued to accumulate

9

franchises both independently and collectively. BUTT started ARG as a management company in 2015. DURRANI started the second management company, NU GEN, in 2019. Although ARG and NU GEN are technically separate legal entities, their business operations are intertwined and co-mingled.

28.     In 2012, BUTT was convicted of violating 18 U.S.C. § 1546 in the Eastern District of Virginia for falsely sponsoring a labor certification for a non-citizen employee working at a PLK restaurant.

**Evidence of Criminal Activity:**

29.     During this ongoing investigation, HSI special agents obtained evidence that multiple individuals who are unlawfully present in the United States without employment authorization were working at several PLK restaurants owned by BUTT and DURRANI and managed by ARG and NU GEN restaurants from February 2019 to the present.

30.     On or about February 5, 2019, HSI special agents went to the PLK location at 3705 S. High St., Columbus, OH 43207 (South High Chicken). Agents spoke with an individual, TH. TH is a shift manager, who confirmed the employment of JCM. JCM is a non-citizen unlawfully present in the United States with no employment authorization. JCM is on supervised release from Immigration and Customs Enforcement (ICE) / Enforcement and Removal Operations (ERO). TH identified ALI as the District Manager and SMITH as the store manager for South High Chicken. As a part of supervised release, JCM had been assigned to wear an ankle monitor. Using data from the ankle monitor, HSI special agents identified JCM's residence located at 3817 Tiger Lilly Dr., Columbus, OH 43207. HSI special agents obtained a copy of the apartment's lease showing that it was rented by ALI.

10

31.     Subsequently, HSI Special agents identified additional PLK locations in Ohio that were associated with BUTT and DURRANI. These locations include 2580 Maple Ave., Zanesville, OH 43701 (Zanesville Chicken); 964 N. 21st St, Newark, OH 43552 (964 Newark Chicken); and 1559 Marion-Mount Gilead Rd, Marion, OH 43302 (Marion Chicken). Ohio Secretary of State records reveal that each location is a separate LLC. The Articles of Organization for each LLC show BUTT and DURRANI as authorized agents and representatives, and each lists the address of 68 Culver Rd, Suite 150, Monmouth Jct, NJ 08852. Public record searches confirm that is the address of ARG's business office.

32.     Additional research determined that PLK locations in Ohio are part of a larger group of at least 100 franchises managed by ARG and NU GEN. Each franchise location is organized separately as an LLC. BUTT and/or DURRANI own a plurality of the shares of each LLC which also have several minority owners.

33.     In February of 2019, HSI special agents interviewed several of Zanesville Chicken's former employees. Three of the employees, identified herein by the initials SXC, RXM and NG, admitted and are confirmed by ICE records as being non-citizens unlawfully present in the United States and with no employment authorization. These employees also admitted that their lack of proper employment authorization was known to management, specifically JAMIL and SMITH. Additionally, JAMIL leased an apartment located at 740 Princeton Ave, Apt. 3, Zanesville, OH 43701 for these employees to live in because they were not able to provide necessary documentation to lease an apartment for themselves. These employees worked at Zanesville Chicken from December 2018 to January 2019. The apartment was leased by JAMIL

---

[2] PLK Newark was closed by the Ohio Department of Taxation in January 2018 for failure to pay sales tax.

on September 17, 2018. These employees' wages, and payments for this apartment and its utilities, were made by cash withdrawals from Zanesville Chicken's cash register at the direction of JAMIL.

34. In April of 2019, HSI special agents interviewed several of South High Chicken's former employees. Five of the employees, identified herein by the initials NG,[3] FBS, PZ, MCM, and MCB, admitted and are confirmed by ICE as being non-citizens unlawfully present in the United States with no employment authorization. NG, FBS and PZ also admitted that their lack of proper employment authorization was known to JAMIL, SMITH and ALI. These employees began working at South High Chicken in 2018 and continued working there until the beginning of 2020. Additionally, ALI leased apartments located at 180 Alyssum Ave., Columbus, OH 43207 and 3817 Tiger Lilly Dr., Columbus, OH 43207 for these employees to live in because they were not able to provide necessary documentation to lease an apartment for themselves. ALI also registered a vehicle in his name, which was purchased for NG, because NG was not able to provide necessary documentation to purchase and register the vehicle on his own. These employees' wages, and payments for the apartments and the utilities, were made by cash withdrawals from South High Chicken's cash register at the direction of ALI.

35. NG stated that ALI asked NG to recruit any friends who wanted to work. NG stated that he recruited FBS to work at South High Chicken. NG said that South High Chicken's management, specifically ALI and SMITH, never asked for any immigration employment authorization documents that would allow NG to be legally employed in the United States.

36. HSI special agents interviewed NG again after agents observed NG working at Marion Chicken during surveillance. NG previously admitted to being a non-citizen unlawfully

---

[3] NG appears in multiple store summaries because he has worked for AR for approximately eight years at multiple PLK restaurant locations in multiple states.

present in the United States with no employment authorization. NG stated that his lack of proper employment authorization was known to ALI, SMITH and ARGYROPOULOS. NG worked at Marion Chicken as needed, when instructed to do so by ALI and SMITH, during his time in the greater Columbus, OH area. Additionally, JAMIL rented an apartment located at 470 Pennsylvania Avenue #D, Marion, Ohio 43302. NG stayed at this apartment while he was working at Marion Chicken. NG explained that MCM and JCM, who had worked with him at South High Chicken, were both sent to work at Marion Chicken by ALI and SMITH.

37. NG also stated that he worked at 964 Newark Chicken for approximately two months under the direction of ARGYROPOULOS. NG and ARGYROPOULOS resided at the same apartment (address unknown). ALI paid the rent for this apartment with cash. The rent payments were meant to be part of NG's salary. 964 Newark Chicken was closed on January 28, 2018 due to the suspension of its vendor's license. Per the Ohio Department of Taxation, 964 Newark Chicken was habitually late in filing and/or paying the Ohio sales tax and to date has not reopened.

38. NG stated that he was sent to work at various PLK restaurants operated by ARG and NU GEN located in Pennsylvania on several occasions. Each time NG was sent to Pennsylvania to work, his transportation was provided by or paid for by ALI, JAMIL or YAVER. NG also stated that ALI, JAMIL, and YAVER paid for his lodging while he was working in Pennsylvania. NG said he has worked at PLK restaurants operated by ARG and NU GEN for eight or nine years, including restaurants located in New Jersey, Pennsylvania, Ohio, Maryland, and New York. NG stated that at each location, ARG and NU GEN management arranged and paid for his lodging. NG stated that his wages were always paid in cash with no taxes withheld.

13

39. On April 10, 2019, a former employee identified herein by the initials CA was interviewed. CA is a U.S. Citizen. CA performed the daily managerial duties at Zanesville Chicken, beginning sometime in the Fall of 2018 until January of 2019 and has firsthand information related to the management and record keeping practices of the PLK restaurants operated by ARG and NU GEN. During CA's employment, CA reported to ALI and JAMIL, who functioned as regional managers over the PLK restaurants in Ohio.

40. CA told agents that CA observed JAMIL hire three employees who were non-citizens unlawfully present in the United States without employment authorization, identified herein by initials SXC, RXM and RXC, to work as cooks at Zanesville Chicken. CA stated JAMIL knew that these workers lacked proper documentation to work in the United States and did not require these employees to complete an employment application or provide any identification or tax identification number. CA stated that JAMIL had acquired an apartment for these employees to live at while they were working at Zanesville Chicken.

41. Per JAMIL's instruction, CA paid SXC, RXM and RXC with cash that was taken out of the register. Some of the cash taken from the register was provided directly to the employees, and some of it was used to pay the rent for their apartment. CA provided agents with screenshot text messages where JAMIL was providing direction for CA to pay these employees in cash and to pay their rent.

42. On August 31, 2020 a former employee identified herein by the initials AN was interviewed. AN had intimate knowledge of the inner workings of ARG and NU GEN and the PLK restaurants they operated. AN confirmed that there are approximately 50 employees who are non-citizens unlawfully present in the United States without employment authorization. These employees primarily work as cooks at the PLK restaurants operated by ARG and NU GEN in

14

multiple locations across several states. AN stated that most of these cooks come from Guatemala. AN stated that DURRANI arranges for the cooks to be paid in cash and pays for their lodging in hotels or apartments. DURRANI uses ALI, SIKANDER, and YAVER to facilitate the payments and lodging arrangements for the cooks. AN stated that many of these employees have been working at PLK restaurants operated by ARG and NU GEN for several years. AN stated that one of these employees, who was currently working at the PLK restaurant located at 2511 Northeast Blvd, Wilmington, Delaware (Northeast Blvd Chicken), has been working with these organizations for 12 years. AN stated that DURRANI and others in the core management group of ARG and NU GEN would take cash from the registers to pay wages and lodging costs for these employees. They would also take cash from the registers for their personal benefit. They would direct AN and other employees managing the restaurants to void or cancel sales equaling the amount of cash taken out to conceal these actions from the records relied on by the franchisor to determine the royalties due.

43. As previously noted, each of the restaurants managed by ARG and/or NU GEN is owned by a separate LLC for which BUTT and/or DURRANI are partial owners. Each of the LLCs files quarterly employment tax returns. ARG and NU GEN also file their own Forms 941 for their administrative staff. The entities use various third-party payroll companies such as Paycor and Paychex to handle their official payroll, prepare their employment tax returns, and issue the employees' Forms W-2. BUTT and DURRANI have each signed Form 941 employment tax returns for multiple franchises they own. All the filed Forms 941 report wages and withholdings for multiple employees that are consistent with Forms W-2 filed on behalf of these entities with the IRS. IRS records indicate that Forms W-2 were not issued to any of the employees who are non-citizens unlawfully present in the United States without employment authorization.

15

Accordingly, it is believed that BUTT, DURRANI, ARG and NU GEN only report the wages paid to employees who are U.S. citizens and/or lawful U.S. residents.

44.     Based on the interviews conducted with several current and former employees at restaurants operated by ARG and NU GEN, I submit that BUTT, DURRANI, and the rest of the management group for ARG and NU GEN knew what documentation was required for non-citizens to be authorized to work in the United States and intentionally disregarded those requirements when hiring individuals who they knew were unlawfully present in the United States without employment authorization. I further submit that BUTT, DURRANI, and the rest of the ARG/NU GEN management groups are aware of the tax withholding requirements for employees but intentionally failed to withhold taxes from the wages paid to employees who were non-citizens unlawfully present in the United States without employment authorization.

**Existence of Evidence:**

45.     Per interviews with current and former employees working for ARG, NU GEN or the restaurants they manage, both organizations use a record keeping system that electronically transmits financial data from each store location to the ARG and NU GEN headquarters. Data from the point of sale systems (POS), along with additional data including regular payroll information and cash payouts, are entered into this record keeping system, which can be accessed remotely via the Internet. The system was originally called AR Reporting and its web address was www.ARReporting.net. The system has been recently upgraded and the name has been changed to Dream Big Holdings. The web address has also changed to

16

www.DreamBigHoldings.com. Both web sites have the same IP address (18.220.103.101), and the old AR Reporting website redirects to the new Dream Big Holdings website.

46.     The investigation determined that the IP address associated with these websites was hosted by Amazon Web Services (AWS). A subpoena to AWS confirmed the websites belonged to individuals known to be involved with ARG and NU GEN.

**Results of Previous Search Warrants:**

47.     In November 2019, a search warrant was issued to AWS for records and data maintained within the ARG cloud account. In response to the search warrant, AWS provided information that indicates that no records were stored in the cloud account. The information indicates that the cloud account was used to transmit data from multiple locations.

48.     In response to the search warrant, AWS provided data which indicates over 28,000 unique IP addresses interacted with the cloud account to send or receive data. Several of the IP addresses which interacted with the cloud account the most frequently and received the largest volume of data were static IP addresses associated with Internet service providers Comcast Internet and Optimum Online.

49.     A subpoena issued to Comcast revealed that IP address 96.90.129.14, which interacted with the ARReporting cloud account, has been assigned to ARG since 2015. Per the subscriber information provided by Comcast, ARG's business address is 68 Culver Rd, Suite 150, Monmouth Junction, New Jersey 08852. The point of contact listed for ARG's account with Comcast is Nadeem Shaikh, CFO of ARG.

50.     A subpoena issued to Optimum Online revealed that IP address 173.220.103.91, which interacted with the ARReporting cloud account, has been assigned to ARG since 2016. Per the subscriber information provided by Optimum Online, ARG's business address is 68

17

Culver Rd, Suite 150, Monmouth Junctions, New Jersey 08852. The subpoena issued to Optimum Online revealed that IP address 75.127.180.106, which interacted with the ARReporting cloud account, has been assigned to NU GEN since 2019. Per the subscriber information provided by Optimum Online, NU GEN's business address is 53 Knightsbridge Rd, Suite 220, Piscataway, New Jersey 08854.

51.     On February 10, 2021, search warrants were executed at the business offices of ARG and NU GEN. During the execution of the search warrants, special agents found evidence relevant to the investigation of the alleged crimes. Special agents conducted interviews of employees who arrived on site during the execution of the search warrant. Additionally, IRS-CI special agents trained as Computer Investigative Specialists obtained forensic images of several computers and other digital media storage devices.

**Observations of the Computer Investigative Specialists:**

52.     During the execution of the above referenced physical search warrants, IRS-CI special agents trained as Computer Investigative Specialists (CIS) began to triage and identify all computer systems on the premises.

53.     Specifically, at the ARG site multiple desktop computers were found running and unlocked. The monitors reflected that a couple of these computers were connected to sessions of a Remote Desktop Protocol (RDP). In addition, a session of the QuickBooks Enterprise 21 application was running and visible from the desktop. A drop-down box was requesting the user to "Open a Company File" with a second source window showing a list of QuickBooks company files. The QuickBooks files with the file extensions ".QBW" included franchise entities such as Popeyes, Arby's, and Dunkin Donuts.

54. Based on the knowledge, training, and experience of the CIS, it was determined that the QuickBooks files or any other data on the RDP was technically outside of the scope of the search warrant because the RDP would be construed as a separate location. Once this determination was made, the CIS disconnected the RDP to prevent an unauthorized search of these files.

**Witness Statements:**

55. During the execution of the search warrant, special agents interviewed several employees. At the ARG site, special agents spoke with Salam Ahmad (Ahmad), the Controller of ARG. Ahmad stated that partial QuickBooks records are temporarily saved on local computers, but that the complete QuickBooks records are located on remote computer servers hosted by a company called RPNC Systems.

56. Ahmad provided contact information for RPNC Systems President Raj Dodamani (Dodamani). Special agents contacted Dodamani, who confirmed that both ARG and NU GEN maintained financial records including QuickBooks files on his company's servers. Special agents issued Dodamani a preservation letter dated February 4, 2011. Dodamani stated that he immediately created an image of the ARG and NU GEN servers as of the date of the preservation letter.

## CONCLUSION

57. Based on information presented above, I submit that there is probable cause to believe that evidence of the alleged criminal violations engaged in by BUTT, DURRANI, ARG and NU GEN, exists in the form of electronic data, files, and other records, and is stored at the premises of RPNC.

19

58.     THEREFORE, I respectfully request that the Court issue the proposed search warrant.

59.     I anticipate executing this warrant pursuant to the Electronic Communications Privacy Act, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using this warrant to require RPNC to disclose to the government copies of records and other information including the content of communication particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information and locate the items described in Section II of Attachment B.

60.     Pursuant to 18 U.S.C. §2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

61.     The Government will execute this warrant by serving the warrant on RPNC, who may compile the requested data at their convenience any time day or night. RPNC shall provide the Government with all items subject to this warrant within 14 days of issuance of this warrant.

Respectfully submitted,

*Randal L. Gaddis II*

Randal L. Gaddis II
Special Agent, IRS-CI

Special Agent Gaddis attested to this Affidavit by
telephone pursuant to F.R.C.P. 4.1 on _May 26_, 2021

_ HONORABLE CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

20

## Attachment A

### Property to Be Searched

This warrant applies to electronic records and other data associated with AR Group of Restaurants, NU GEN Restaurant Group, as well as all of their affiliated business entities, which are known to be stored at the premises owned, maintained, controlled and operated by RPNC Systems, a cloud computing web services company whose headquarters is located at 371 Hoes Lane #200 Piscataway, New Jersey 08854.

## ATTACHMENT B - I

**Information to be disclosed by RPNC Systems (RPNC)**

 To the extent that the information described in Attachment A is within the possession, custody, or control of RPNC, including any messages, records, files, logs, or information that have been deleted but are still available to RPNC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), RPNC is required to disclose the following information to the government for each account belonging to ARG or NU GEN, as well as any of their respective related entities.

a)      Messages, records, logs, or drive images from RPNC controlled virtual private systems or RPNC provided services.

b)      List and descriptions of the types of service currently or formerly utilized by the users.

c)      All records or other information stored by an individual using the account, including but not limited to contact telephone numbers, owner names, user names, authorized user names, passwords, method of payment for services, billing addresses, owner email addresses, and authorized user email addresses;

d)      All records pertaining to communications between RPNC and any person regarding the account, including contacts with support services and records of actions taken.

 The provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

22

## ATTACHMENT B - II

**Information to be seized by the government**

All information described above in Section I, for the period of January 1, 2017 to February 28, 2021, that constitutes fruits, evidence, and instrumentalities of violations of  8 U.S.C. § 1324 (related to the bringing in and harboring of unauthorized non-citizen workers), and  26 U.S.C. §§ 7201, 7202, 7206 (involving tax evasion, employment tax fraud, and filing false tax returns), including information pertaining to the following matters:

e) All QuickBooks records, as well as any related or similar type of formal and informal bookkeeping/accounting records and supporting source documents relating to receipts and expenditures, including daily sheets, general ledgers, accounts and notes receivables, accounts and notes payable, balance sheets, income statements, statements of profit and loss, check registers, invoicing records, cost of goods sold calculations, inventory records, supplier records, invoices and receipts books, point of sale records, petty cash records or other records of cash transactions.

f) All tax records or related information or documents, including all schedules and attachments, drafts and copies of any returns, unfiled or partially completed returns, all tax forms and schedules, tax preparation documents.

g) All payroll, employment or labor records including applications for employment, personnel files, worker identification documents, work schedules, time sheets, employee/contractor lists and assignment sheets, unemployment and/or worker compensation records, paychecks, payroll invoices, payroll summaries, employment tax returns, and payroll/employment related correspondence.

23

h)  List of usernames, and access logs showing which users access which files, including the audit trail.

i)  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the storage devices or data; and

j)  Any passwords, password files, test keys, encryption codes or other information necessary to access the, storage devices or data.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF
## EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by RPNC Systems, and my title is

_____. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of RPNC

Systems. I further state that:

a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with knowledge

of those matters, they were kept in the ordinary course of the regularly conducted business activity

of RPNC Systems, and they were made by RPNC Systems as a regular practice; and

b.     such records were generated by RPNC Systems electronic process or system that

produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of RPNC Systems in a manner to ensure that they are true duplicates of the

original records; and

2.     the process or system is regularly verified by RPNC Systems, and at all

times pertinent to the records certified here the process and system functioned properly and

normally.

25

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

The attached records consist of the following (provide a general description of records including number of pages, as well as number, type and size of digital media devices):

_____

_____

_____


_____    _____

Date                   Signature